DEILY, MOONEY & GLASTETTER, LLP
8 Thurlow Terrace
Albany, New York 12203
(518) 436-0344
Martin A. Mooney, Esq. (BBO# 632599)


UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

| | |
|---|---|
| In Re:<br><br>BRIAN D. GOULDRUP,<br><br>                    Debtor. | **MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(d)(1) AND CO-DEBTOR STAY PURSUANT TO 11 U.S.C. SECTION 1301(c)**<br><br>Case No. 08-11700-JNF<br>(Chapter 13) |

———————————————————————

      Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc., a secured creditor in the above-captioned bankruptcy case, by its counsel, DEILY, MOONEY & GLASTETTER, LLP, as and for a Motion for Relief from Automatic Stay pursuant to 11 U.S.C. Section 362(d)(1) and a Motion for Relief from Co-Debtor Stay pursuant to 11 U.S.C. Section 1301(c), or, in the alternative, for adequate protection, states the following as grounds therefor:

      1.      On March 12, 2008, the debtor, above-named, filed a voluntary petition in Bankruptcy under Title 11, Chapter 13, U.S.C., in the United States Bankruptcy Court, for the District of Massachusetts.

      2.      The Court has jurisdiction to entertain this motion under 28 U.S.C. Section 157.

      3.      Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc. (hereinafter "Wells Fargo") is a secured creditor herein and the holder of a duly perfected purchase money security interest in one (1) 2004 Kia Sedona (V.I.N. KNDUP131948508042) (hereinafter "collateral") owned by the debtor.

4.Pursuant to 11 U.S.C. Section 362, upon the commencement of the instant bankruptcy case, Wells Fargo is stayed from taking any action against the debtor to obtain possession of the collateral. Pursuant to 11 U.S.C. Section 1301, upon the commencement of the instant bankruptcy case, Wells Fargo is stayed from taking any action against the co-debtor to obtain possession of the collateral or collect any amounts that remain due and owing.

5.On May 17, 2005 the debtor and Jill Allbritton (hereinafter "co-debtor") entered into a Retail Installment Contract (hereinafter "Contract") with Kia of Naples (hereinafter "dealer") for the purchase of the collateral. Pursuant to the terms and conditions of the Contract, Wells Fargo was granted a purchase money security interest in the collateral. Thereafter, the Contract, pursuant to its terms, was duly assigned by the dealer to Wells Fargo for good and valuable consideration. Wells Fargo is now the holder and owner of said Contract. A copy of the Contract and evidence of the perfected lien are collectively annexed hereto as Exhibit "A" and made a part hereof.

6.As of July 9, 2008, the debtor and co-debtor were in default of their payment obligations to Wells Fargo pursuant to the terms and conditions of the Contract as follows:

a.Net balance due:$12,003.83

b.Post-petition arrears: $366.83 for the months of May, 2008
through July, 2008, together with applicable late charges.

(**NOTE:** The foregoing does not represent any amount which may be due for costs and attorneys' fees as may be allowed by the Court.)

7.Wells Fargo has ascertained that the wholesale value of its security is SEVEN THOUSAND SIX HUNDRED FIFTY AND 00/100 ($7,650.00) DOLLARS based on NADA Used Car Guide's estimated value of the collateral in average condition. A copy of the N.A.D.A Guide for valuation of the collateral is attached hereto. Upon information and belief, there does not exist any other encumbrance affecting the collateral. There is no other collateral securing the indebtedness.

8.     The debtor has failed to elect to redeem the collateral and has not sought to reaffirm his underlying obligations to Wells Fargo.

9.     Upon information and belief, the collateral continues to be used on a daily basis. It is respectfully submitted that the continued use of the collateral shall eventually render it valueless, causing Wells Fargo irreparable damage to its interests in same.

10.    It is respectfully asserted that Wells Fargo's interest in the collateral will not be adequately protected if the automatic stay is allowed to remain in effect.

11.    Accordingly, sufficient cause exists to grant Wells Fargo relief from the automatic stay and relief from co-debtor stay herein which includes, but is not limited to, the following:

   a. The debtor and co-debtor are in default under the terms and conditions of the Retail Installment Contract.

   b. The security interest of Wells Fargo with respect to the collateral is not adequately protected as envisioned under 11 U.S.C. Section 361.

   c. The debtor does not possess an equity interest in the collateral.

12.    In the event relief from the co-debtor stay is granted, Wells Fargo further requests relief to pursue the co-debtor for any amounts remaining due and owing pursuant to the terms of the underlying Retail Installment Contract subsequent to sale of the collateral that shall not otherwise be paid through the debtor's Plan.

13.    It is respectfully submitted that Wells Fargo is in a more advantageous position to obtain an optimum price for the sale of the collateral thereby increasing the possibility of generating a surplus for distribution to creditors of the estate.

14.     Alternatively, in the event relief from automatic stay and co-debtor stay is not granted, then Wells Fargo respectfully requests that the Court compel the debtor and co-debtor to immediately provide adequate protection to Wells Fargo by (a) curing any default of payment obligations arising pursuant to the terms and conditions of the Contract; (b) continuing to make payment in timely fashion thereunder, (c) maintaining adequate and continuous insurance coverage on the collateral, and (d) providing such other adequate protection as the Court may deem proper.

15.     In the event this request for adequate protection is granted, then Wells Fargo respectfully requests that it be entitled to the immediate possession of the collateral without further Court proceedings in the event of default by the debtor and co-debtor under any provisions for adequate protection which may be awarded herein.

16.     No prior application for the relief requested herein has been made.

WHEREFORE, Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc. respectfully requests that the Court issue an Order, pursuant to 11 U.S.C. Section 362 and pursuant to 11 U.S.C. Section 1301(c) (a) granting Wells Fargo relief from automatic stay in order to obtain possession of its collateral and granting Wells Fargo relief from co-debtor stay in order to obtain possession of its collateral, and pursue the co-debtor for any amounts that remain due and owing pursuant to the terms of the underlying Retail Installment Contract subsequent to sale and are not otherwise proposed to be paid by the debtor's Plan, or, in the alternative, (b) directing the debtor and co-debtor to provide for the adequate protection of the security interest of Wells Fargo in the collateral as hereinabove requested, and for such other and further relief as to the Court may seem just and proper.

DATED:    July 10, 2008
           Albany, New York

                                       WELLS FARGO FINANCIAL
                                        MASSACHUSETTS, INC., SUCCESSOR BY
                                      MERGER TO WELLS FARGO FINANCIAL
                                        ACCEPTANCE MASSACHUSETTS, INC.
                                      By its Counsel:

                                 By:   /s/ Martin A. Mooney
                                       Martin A. Mooney, Esq.
                                        DEILY, MOONEY & GLASTETTER, LLP
                                       8 Thurlow Terrace
                                       Albany, New York  12203-1006
                                       Tel. (518) 436-0344

08.03834\motcode1.sta

# RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE

**Buyer (and Co-Buyer) Name and Address:**
BRIAN GOULDRUP
JILL A ALLBRITTON
21511 MONMOUTH RUN
ESTERO FL 33928
Buyer's Month of Birth: JULY

**Creditor - Seller (Name and Address):**
KIA OF NAPLES
1471 AIRPORT ROAD SOUTH
NAPLES FL 34104

Handwritten annotation: "TRADE PAYMENT TO 55 WILLIAMS ST TAUNTON MA 02780"

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 15.75 % per year. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Weight (lbs) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2004 | KIA SEDONA | | KNDUP131946588842 | ☒ personal, family or household ☐ business ☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE (yearly rate) | FINANCE CHARGE (The dollar amount the credit will cost you) | Amount Financed (The amount of credit provided to you or on your behalf) | Total of Payments (The amount you will have paid after you have made all payments as scheduled) | Total Sale Price (The total cost of your purchase on credit, including your down payment of $ 5225.00) |
|---|---|---|---|---|
| 15.50 % | $ 9569.46 | $ 16642.30 | $ 26211.76 | $ 31436.76 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 366.83 | Monthly beginning 10/01/2005 |

Or As Follows: ___

Late Charge: If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late.
Prepayment: If you pay off all your debt early, you may have to pay a penalty.
Security Interest: You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

## ITEMIZATION OF AMOUNT FINANCED
1. Cash Price (including $ 892.17 sales tax) .......... $ 29586.67 (1)
2. Total Downpayment =
   Trade-in 2002 HYUNDAI ELANTRA
   (Year) (Make) (Model)
   Trade-in KMHDN45D024481154
   (VIN)
   Gross Trade In Allowance  $ 5225.00
   Less: Pay Off Made By Seller  $ N/A
   Equals Net Trade In  $ 5225.00
   + Cash  $ N/A
   + Other  $ N/A
   (If total downpayment is negative, enter "0" and see 4I below)  $ 5225.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2)  $ 15761.67 (3)
4. Other Charges including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies:
      Life  $ N/A
      Disability  $ N/A
   B. Vendor's Single Interest Insurance Paid to Insurance Company  $ N/A
   C. Other Insurance Paid to Insurance Company or Companies  $ N/A
   D. Official Fees Paid to Government Agencies  $ N/A
   E. Government Documentary Stamp Taxes  $ 59.15
   F. Government Taxes Not Included in Cash Price  $ 18.48
   G. Government License and/or Registration Fees
      REG  100.00  $ 100.00
   H. Government Certificate of Title Fees  $ N/A
   I. Other Charges (Seller must identify who is paid and describe purpose)
      to _____ for Prior Credit or Lease Balance  $ N/A
      to _____ for _____  $ N/A
      to ULTIMATE for MAINT CONT  $ 388.00
      to _____ for _____  $ N/A
      to _____ for _____  $ N/A
      to USMF for BRD COVERAGE  $ 593.00
   Total Other Charges and Amounts Paid to Others on Your Behalf  $ 1058.63 (4)
5. Loan Processing Fee Paid to Seller (Prepaid Finance Charge)  $ N/A
6. Amount Financed (3 + 4 + 5)  $ 16842.30 (5)

Payment Schedule: 72 installments of $ 366.83 each, monthly beginning 10/01/2005
or 71 other: ___

**Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.** [additional insurance disclosure text]

Check the insurance you want and sign below:
**Optional Credit Insurance**
☐ Credit Life  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Term _____ N/A
☐ Credit Disability (Buyer Only)
Term _____ N/A
Premium:
Credit Life $ _____ N/A
Credit Disability $ _____ N/A
Insurance Company Name _____
Home Office Address _____

[Credit insurance disclosure paragraphs]

Buyer X _____ Date _____
Co-Buyer X _____ Date _____

[Additional disclosures regarding credit insurance signatures]

Buyer X _____ Date _____
Co-Buyer X _____ Date _____

**Other Insurance**
☐ Type of Insurance _____ Term _____
Premium $ _____ N/A
Insurance Company Name _____
Home Office Address _____

☐ I want the insurance checked above
Buyer Signature X _____ Date _____
Co-Buyer Signature X _____ Date _____

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

[Returned Check Charge disclosure]

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, etc.). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A, and is also shown in Item 4B of the ITEMIZATION OF AMOUNT FINANCED. The coverage is for the initial term of the contract.
*You authorize us to purchase Vendor's or Lessor's Single Interest Insurance.

Buyer _____ Co-Buyer _____ Date _____

OPTION: ☐ You pay no finance charge if the amount financed, item 5, is paid in full on or before _____ N/A _____, Year _____ SELLER'S INITIALS _____

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs X _____  Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.
NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 08/17/2005  Co-Buyer Signs X _____ Date 08/17/2005
Co-Buyer and Other Owners - A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner's Name X _____ Address _____
Seller signs _____ KIA OF NAPLES _____ Date _____ By _____ Title _____

Seller assigns its interest in this contract to WELLS FARGO FIN ACCEPT (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse  ☐ Assigned without recourse  ☐ Assigned with limited recourse
Seller _____ KIA OF NAPLES _____ By _____ Title _____

LAW [form number]

ORIGINAL LIENHOLDER

OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. How we will figure Finance Charge. We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.
   c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. You may ask for a payment extension. You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company of your insurance contract permits it, and you pay the charge for extending this insurance.
   If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. **YOUR OTHER PROMISES TO US**
   a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. Security Interest.
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. Insurance you must have on the vehicle.
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. What happens to returned insurance, maintenance, service, or other contract charges. If we obtain a refund on insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

   If you pay late, we may also take the steps described below.
   b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      • You do not pay any payment on time;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
      The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as permitted by law. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
   d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   **Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **Optional Service Contracts.**
   You are not required to buy a service contract to obtain credit. Your choice of service contract providers (or any service contracts you buy) will not affect our decision to sell or extend credit to you.

7. **Rejection or Revocation.**
   If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

8. **Applicable Law**
   Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 513-FL 19/04

[Image of a Florida Certificate of Title showing: State of Florida, Date of Issue 08/21/2005, Title Number 0084382L. Registered Owner: Jill Allbritton or Brian Gouldrup, 21213 Haymouth Run, Estero FL 33928. Vehicle: 2004 KIA VN, 4D02. 1st Lienholder: Wells Fargo Financial Acc, Post Office Box 250, Essington PA 19029-0250. Odometer: 6174 miles actual on 08/17/2005. Lien Satisfaction / Lien Release stamp dated 08/21/2005, signed by Fred O. Dickinson III, Executive Director, Department of Highway Safety and Motor Vehicles. Control number 74292312.]

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 750 | Deduct W/out Air Conditioning | | | | 750 | 750 |

**KIA**
**2006 SPORTAGE-V6-4WD** — Mileage Class: I

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 11325 | Utility 4D LX (2WD, 4 Cyl.) | JF72(2/4) | $15900 | 3225 | 10200 | 13550 |
| 11975 | Utility 4D LX (2WD) | JF723 | 19100 | 3344 | 10800 | 14225 |
| 12825 | Utility 4D EX (2WD) | JF723 | 20600 | | 11550 | 15200 |
| 11850 | Utility 4D LX (4 Cyl., 5 Spd.) | JE72(2/4) | 18500 | 3406 | 10675 | 14100 |
| 13025 | Utility 4D LX | JE723 | 20300 | 3521 | 11725 | 15425 |
| 13875 | Utility 4D EX | JE723 | 22000 | | 12500 | 16300 |
| 300 | Add Leather Seats | | | | 300 | 350 |
| 100 | Add Theft Recovery System | | | | 100 | 125 |
| 600 | Deduct W/out Air Conditioning | | | | 600 | 600 |
| 525 | Deduct W/out Automatic Trans. (4 Cyl. 2WD) | | | | 525 | 525 |

**2006 SEDONA-V6** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 11725 | Wagon LX | MB23 | $22995 | 4387 | 10575 | 13975 |
| 12825 | Wagon EX | MB23 | 25595 | | 11550 | 15200 |
| 500 | Add Dual Power Sliding Doors | | | | 500 | 575 |
| 325 | Add Infinity Stereo System | | | | 325 | 375 |
| 400 | Add Leather Seats | | | | 400 | 450 |
| 525 | Add Power Sunroof | | | | 525 | 600 |
| 700 | Add Rear Entertainment System | | | | 700 | 800 |
| 100 | Add Theft Recovery System | | | | 100 | 125 |

**2006 SORENTO-V6-4WD** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 11075 | Utility 4D LX (2WD) | JD | $18995 | 4191 | 9975 | 13475 |
| 12125 | Utility 4D EX (2WD) | JD | 24200 | | 10925 | 14625 |
| 12175 | Utility 4D LX | JC | 21000 | 4387 | 10975 | 14675 |
| 13225 | Utility 4D EX | JC | 26100 | | 11925 | 15800 |
| 250 | Add Aluminum/Alloy Wheels (LX) | | | | 250 | 300 |
| 400 | Add Leather Seats | | | | 400 | 450 |
| 100 | Add Theft Recovery System | | | | 100 | 125 |
| 625 | Deduct W/out Automatic Trans. | | | | 625 | 625 |

**KIA**
**2005 SPORTAGE-V6-4WD** — Mileage Class: I

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 10350 | Utility 4D LX (2WD, 4 Cyl.) | JF72(2/4) | $15900 | 3225 | 9325 | 12500 |
| 10950 | Utility 4D LX (2WD) | JF723 | 18500 | 3344 | 9875 | 13125 |
| 11750 | Utility 4D EX (2WD) | JF723 | 19999 | | 10575 | 14000 |
| 10875 | Utility 4D LX (4 Cyl., 5 Spd.) | JE72(2/4) | 17900 | 3406 | 9800 | 13050 |
| 11950 | Utility 4D LX | JE723 | 19700 | 3521 | 10775 | 14200 |
| 12750 | Utility 4D EX | JE723 | 21400 | | 11475 | 15125 |
| 250 | Add Leather Seats | | | | 250 | 300 |
| 100 | Add Theft Recovery System | | | | 100 | 125 |
| 550 | Deduct W/out Air Conditioning | | | | 550 | 550 |
| 475 | Deduct W/out Automatic Trans. (4 Cyl. 2WD) | | | | 475 | 475 |

**2005 SEDONA-V6** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 8475 | Wagon LX | UP13 | $20200 | 4802 | 7650 | 10375 |
| 9425 | Wagon EX | UP13 | 22600 | | 8500 | 11450 |
| 350 | Add Leather Seats | | | | 350 | 400 |
| 475 | Add Power Sunroof | | | | 475 | 550 |
| 175 | Add Rear Bucket Seats (Std. EX) | | | | 175 | 200 |
| 600 | Add Rear Entertainment System | | | | 600 | 675 |
| 100 | Add Theft Recovery System | | | | 100 | 125 |

SEE TRUCK SECTION PAGE 2 FOR ADDITIONAL OPTIONS
EASTERN EDITION - JULY 2008

---

**2005 SORENTO-V6-4WD** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 9950 | Utility 4D LX (2WD) | JD | $18995 | 4112 | 8975 | 12200 |
| 10850 | Utility 4D EX (2WD) | JD | 23600 | 4123 | 9775 | 13150 |
| 10950 | Utility 4D LX | JC | 20900 | 4306 | 9875 | 13250 |
| 11850 | Utility 4D EX | JC | 25500 | 4387 | 10675 | 14300 |
| 200 | Add Aluminum/Alloy Wheels (LX) | | | | 200 | 225 |
| 350 | Add Leather Seats | | | | 350 | 400 |
| 100 | Add Theft Recovery System | | | | 100 | 125 |
| 575 | Deduct W/out Automatic Trans. | | | | 575 | 575 |

**KIA**
**2004 SEDONA-V6** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 6850 | Wagon LX | UP13 | $19975 | 4802 | 6175 | 8600 |
| 7650 | Wagon EX | UP13 | 22085 | | 6900 | 9475 |
| 300 | Add Leather Seats | | | | 300 | 350 |
| 425 | Add Power Sunroof | | | | 425 | 475 |
| 500 | Add Rear Entertainment System | | | | 500 | 575 |

**2004 SORENTO-V6-4WD** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 8500 | Utility 4D LX (2WD) | JD | $18995 | 4057 | 7650 | 10625 |
| 9275 | Utility 4D EX (2WD) | JD | 23050 | | 8350 | 11450 |
| 9450 | Utility 4D LX | JC | 20800 | 4255 | 8525 | 11650 |
| 10225 | Utility 4D EX | JC | 24850 | | 9225 | 12475 |
| 175 | Add Aluminum/Alloy Wheels (LX) | | | | 175 | 200 |
| 300 | Add Leather Seats | | | | 300 | 350 |
| 525 | Deduct W/out Automatic Trans. | | | | 525 | 525 |

**KIA**
**2003 SEDONA-V6** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 5400 | Wagon LX | UP13 | $19370 | 4802 | 4875 | 7025 |
| 6150 | Wagon EX | UP13 | 21585 | | 5550 | 7850 |
| 300 | Add Leather Seats | | | | 300 | 350 |
| 375 | Add Power Sunroof | | | | 375 | 425 |

**2003 SORENTO-V6-4WD** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 7300 | Utility 4D LX (2WD) | J(C/D) | $19500 | 4057 | 6575 | 9300 |
| 7950 | Utility 4D EX (2WD) | J(C/D) | 22300 | | 7175 | 10000 |
| 8150 | Utility 4D LX | JC | 21300 | 4255 | 7350 | 10250 |
| 8800 | Utility 4D EX | JC | 24100 | | 7925 | 10950 |
| 150 | Add Aluminum/Alloy Wheels (LX) | | | | 150 | 175 |
| 300 | Add Leather Seats | | | | 300 | 350 |

**KIA**
**2002 SPORTAGE-4 Cyl.-4WD** — Mileage Class: I

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 2825 | Utility 2D Convertible (2WD) | JB62 | $14645 | 3108 | 2550 | 4125 |
| 3175 | Utility 2D Convertible (5 Spd.) | JA62 | 15145 | 3230 | 2875 | 4550 |
| 3775 | Utility 4D (2WD) | JB72 | 17095 | 3186 | 3400 | 5200 |
| 4475 | Utility 4D | JA72 | 18220 | 3352 | 4050 | 5975 |
| 100 | Add Aluminum/Alloy Wheels (2D) | | | | 100 | 125 |
| 75 | Add Cruise Control | | | | 75 | 100 |
| 400 | Deduct W/out Air Conditioning | | | | 400 | 400 |
| 350 | Ded W/out Automatic Trans. (Ex. Conv. 4WD) | | | | 350 | 350 |

**2002 SEDONA-V6** — Mileage Class: II

| Clean Trade-In | Body Type | Model No. | M.S.R.P. | Weight | Loan | Clean Retail |
|---|---|---|---|---|---|---|
| 4250 | Wagon LX | UP13 | $18995 | 4709 | 3825 | 5725 |
| 4900 | Wagon EX | UP13 | 20995 | | 4425 | 6450 |

SEE TRUCK SECTION PAGE 2 FOR ADDITIONAL OPTIONS
EASTERN EDITION - JULY 2008

Case 08-11700  Doc 55  Filed 08/11/08  Entered 08/12/08 08:55:12  Desc Main Document  Page 9 of 12

DEILY, MOONEY & GLASTETTER, LLP
8 Thurlow Terrace
Albany, New York 12203
(518) 436-0344
Martin A. Mooney, Esq. (BBO# 632599)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

_____

In Re:                                              **CERTIFICATE OF SERVICE**
   BRIAN D. GOULDRUP,
                Case No. 08-11700-JNF
         Debtor.   (Chapter 13)
_____

   I, Martin A. Mooney, Esq., certify that I am not less than eighteen (18) years of age; that I electronically filed with the Clerk of the Bankruptcy Court a Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. Section 362(d)(1) and Co-Debtor Stay Pursuant to 11 U.S.C. Section 1301(c) (with attached Exhibits) on July 16, 2008.

**Mail Service:** Regular, first-class United States mail, postage fully pre-paid, addressed to:

| | |
|---|---|
| Brian D. Gouldrup (Debtor) | Jill Allbritton (Co-Debtor) |
| 2 Sage Lane | 20026 Larino Loop |
| South Easton, MA 02375 | Estero, FL 33928 |

**E-Mail Service:** via the court's CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Kenneth Ackerman, Esq. | Office of the U.S. Trustee |
| Attorney for Debtor | Federal Building |
| Ackerman & Schenck | Room 1184, 10 Causeway Street |
| 4 Longfellow Place | Boston, MA 02222 |
| Suite 3703 | |
| Boston, MA 02114 | |

Carolyn Bankowski, Esq. (Trustee)
P. O. Box 8250
Boston, MA 02114

                /s/ Martin A. Mooney
                Martin A. Mooney

08.03834

DEILY, MOONEY & GLASTETTER, LLP
8 Thurlow Terrace
Albany, New York 12203
(518) 436-0344
Martin A. Mooney, Esq. (BBO# 632599)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In Re:

    BRIAN D. GOULDRUP,

                      Debtor.

**ORDER GRANTING RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(d)(1) AND CO-DEBTOR STAY PURSUANT TO <u>11 U.S.C. SECTION 1301(c)</u>**

Case No. 08-11700-JNF
(Chapter 13)

Assigned Judge:
Hon. Joan N. Feeney

      Creditor, Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc., having moved for an Order, pursuant to 11 U.S.C. Section 362(d)(1) and pursuant to 11 U.S.C. Section 1301(c), authorizing relief from automatic stay and co-debtor stay, or the granting of adequate protection herein,

      UPON reading and filing the Notice and Motion for Relief from Automatic Stay, pursuant to 11 U.S.C. Section 362(d)(1) and Co-Debtor Stay Pursuant to 11 U.S.C. Section 1301(c), dated July 10, 2008, together with the exhibits annexed thereto and due proof of service thereof, and upon all pleadings and proceedings heretofore had herein, and no opposition having been interposed, and due deliberation having been had thereon and good and sufficient cause appearing

      NOW, on motion of Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc., by its counsel, Deily, Mooney & Glastetter, LLP, it is hereby

      ORDERED, that pursuant to 11 U.S.C. Section 362(d)(1) and 11 U.S.C. Section 1301(c) the Motion of creditor, Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc., for Relief from Automatic Stay and Co-Debtor Stay be, and the same hereby is, granted; and it is further

2

ORDERED, that the automatic stay and co-debtor stay instituted upon the filing of the petition for an Order for relief by the debtor, above-named, be, and the same hereby is, terminated in that it shall not apply to any action by creditor, Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc., pursuant to applicable state and federal law, to obtain possession and dispose of its collateral in accordance with applicable law; namely, one (1) 2004 Kia Sedona (V.I.N. KNDUP131948508042) or recover from co-debtor, Jill Allbritton, any amounts that remain due and owing pursuant to the terms of the underlying Retail Installment Contract subsequent to sale that are not otherwise proposed to be paid by the debtor's Chapter 13 Plan; and it is further

ORDERED, that all surplus monies, if any, obtained by Wells Fargo Financial Massachusetts, Inc., successor by merger to Wells Fargo Financial Acceptance Massachusetts, Inc. after liquidation of the collateral and satisfaction of its lien, shall be remitted to the Trustee.

DATED:	Boston, Massachusetts	8/11/2008
	July ___, 2008

_____
Hon. Joan N. Feeney
United States Bankruptcy Judge
District of Massachusetts

E N T E R:	08.03834

3